Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, July 27, 2006 2:26:56 PM

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GEORGE THOMAS STOUT and CATHERINE LOUISE STOUT, | ) ) ) | BK. NO. 1:05-bk-05320 |
| Debtors | ) ) | |
| MARTIN P. SHEEHAN, TRUSTEE, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | AP NO. 1:06-ap-00064 |
| v. | ) ) | |
| GEORGE THOMAS STOUT and CATHERINE LOUISE STOUT, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This case came before the court on the motion to dismiss the complaint of Martin P. Sheehan, Trustee (the "Trustee"), against George Thomas Stout (the "Husband") and Catherine Louise Stout (the "Wife"), jointly referred to as the "Debtors." The Trustee alleges in his complaint that the Debtors made false oaths when they improperly designated an ownership interest in real property and claimed an exemption in excess of that allowed under West Virginia law. The parties have agreed to all of the relevant facts and are moving for judgment as a matter of law.

### I. BACKGROUND

The Debtors filed a joint Chapter 7 bankruptcy on October 11, 2005. The following was listed on Schedule A:

1

> Description and Location of Property: "5 parcels broken into pieces by I-79, Rt. 1, Mt. Clare. There were 88 acres, I-79 took 13.1, plus right-of-ways. Approx. 18 acres landlock. Debtor's interest ½ of $70,000."
> Nature of Debtor's Interest in Property: "Co-Owner"
> Husband, Wife, Joint, or Community: "Joint."

Schedule C contained a $35,000.00 exemption claimed in the real property under West Virginia Code § 38-10-4. The real property described on Schedule A is jointly owned by the Husband and his sister, and the Wife has no legal interest in the real estate. The meeting of creditors was set for November 14, 2005, at which the Debtors made two separate statements to the Trustee clarifying the ownership of the real property:

> Trustee:   You own some ground?
>
> Wife:      My husband and his sister owns land.
>
> Trustee:   Did you have that listed here?
>
> Wife:      Yes, it's listed on the -
>
> Trustee:   This is the five parcels along I-79?
>
> Wife:      Yes, sir.
>
> Trustee:   And you valued the total at $70,000 and your half at $35,000?
>
> Wife:      Yes, sir.
>
> Trustee:   Who owns the ground?
>
> Husband:   My sister and I. Yes, sir. The property is what we listed here.
>
> Trustee:   It's on these five parcels? (Referring to an advertising sign owned by the Debtor and his sister)
>
> Husband:   Yes, sir.

The Trustee did not object to the Debtors claim of exemptions. The Trustee did, however, obtain an extension of time to object to the Debtors' discharge, and he filed this adversary proceeding on March 23, 2006. The Debtors filed their motion to dismiss on June 22, 2006; the matter is fully briefed and ripe for review.

## II. DISCUSSION

2

The Trustee asserts that the Debtors knowingly and fraudulently made false oaths in their bankruptcy case, and, therefore, their Chapter 7 discharge should be denied. The Debtors, however, contend that they adequately disclosed their respective ownership interests in the real property on the schedules and further clarified their interest at the meeting of creditors. In addition to arguing that they are entitled to a judgment on the merits, the Debtors seek to have the complaint dismissed as being untimely filed.

**A. Timeliness**

The Debtors contend that the Trustee's complaint is not timely filed and, therefore, should be dismissed. Bankruptcy Rule 4004(a) states that objections to discharge must be filed no later than sixty days after the first date set for the meeting of creditors. This time may be extended under Bankruptcy Rule 4004(b) if a motion seeking an extension is filed before the time has lapsed.

The meeting of creditors in this case was scheduled for November 14, 2005, and the time to file objections to discharge ended on January 13, 2006. The Trustee filed a motion to extend the time to file objections on December 14, 2005, which was opposed by the Debtors. On March 9, 2006, the court entered an order extending the time for the Trustee to file an objection to discharge to March 23, 2006. The Trustee filed his complaint objecting to discharge on March 23, 2006. Therefore, the Trustee's complaint is timely filed.

**B. False Oath - 11 U.S.C. § 727(a)(4)**

The Trustee argues that the Debtors made false oaths in their bankruptcy schedules by representing on Schedule A that the Debtors jointly owned real property, that was only owned by the Husband and his sister, and by claiming an exemption of $35,000.00 in the real property on Schedule C, which is in excess of that allowed by West Virginia law for the Husband alone. A discharge of debt is granted under Chapter 7 of the Bankruptcy Code unless, among other things, a debtor knowingly and fraudulently makes a false oath, which is material to the bankruptcy estate. 11 U.S.C. § 727(a)(4)(A); *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251 (4th Cir. 1987). The bankruptcy code favors discharge, and the exceptions to discharge are narrowly construed. *Wilson v. Key*, No. 97-1408, 1997 U.S. App. LEXIS 34604, *3 (4th Cir. 1997) (unpublished).

3

Here, the Trustee seeks to deny the Debtors discharge under the provisions of 11 U.S.C. § 727(a)(4)(A). Hence, the Trustee must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement materially related to the bankruptcy case. *Williamson,* 828 F.2d at 251-52 (4th Cir. 1987).

Section 727(a)(4)(A) is intended to ensure that those interested in the administration of the bankruptcy estate have adequate information without the need to investigate as to the truthfulness of the information. *Painewebber Inc. v. Gollomp*, 198 B.R. 433, 437 (S.D.N.Y. 1996). Since bankruptcy trustees have insufficient time and resources to investigate the assets and transactions of their debtors, the bankruptcy trustee must have ready access to information regarding a debtor's financial situation at the beginning of the case in order to proceed with the administration of the case. *See, e.g., Carlucci & Legum v. Murray*, 249 B.R. 223, 231 (E.D.N.Y. 2000); *Henkel v. Green*, 268 B.R. 628, 646 (Bankr. M.D. Fla. 2001). Thus, the most important issue in determining whether to deny a discharge is whether or not the debtor has accurately and truthfully presented himself before the court. *Youngblood v. Hembree*, 186 B.R. 530, 533 (Bankr. M.D. Fla. 1995).

The Trustee contends that the listing of "J" under the column, husband, wife, joint, or community in relation to the real estate on Schedule A constitutes a statement under oath. It is undisputed by the Debtors that the information contained in a bankruptcy petition and accompanying schedules is submitted to the court under penalty of perjury and has the force and effect of oaths. 28 U.S.C. § 1746.

The Trustee argues that by listing "J" in relation to the real property on Schedule A, the Debtors falsely claimed to own the one-half interest jointly. The Debtors, however, contend that the use of "Debtor's interest" as opposed to "Debtors' interest" in the description of the real property on Schedule A explains the accurate ownership interests of the Debtors and that the "J" was meant to indicate that the real property is owned jointly by the Husband and his sister. The Wife further argues that she would, in fact, have an ownership interest in the one-half interest in the real estate under West Virginia law if the two were to divorce. The Wife contends that any increase in the value of the real

4

estate would be considered marital property, and, therefore, she would be entitled to one-half of the increase in value since the time of the marriage. Even assuming that the Wife's characterization of West Virginia law is correct, this does not give the Wife a present ownership interest in the real property. The Trustee recites language from the Official Form for Schedule A that explains the appropriate use of the letter "J" on the form.[1] While this language appears on the current Official Form for Schedule A, it does not appear on the Schedule A filed by the Debtors. Given the Debtors' use of singular terms in the description of the property and the lack of any definition for the use of the letter "J," the Debtors' oath on Schedule A was not false because the property is owned jointly between the Husband and his sister.[2]

The Trustee argues that the Debtors' course of conduct indicates a fraudulent intent by falsely portraying joint ownership in order to gain an additional $10,000.00 in exemptions toward the real property. The Debtors, however, claim that they had no fraudulent intent, which is demonstrated by their statements at the meeting of creditors concerning the ownership of the real property. Because a debtor is likely to be the only person able to testify directly concerning his intent, the requirement of a fraudulent intent can be satisfied in one of two ways. *Williamson,* 828 F.2d at 252. Fraudulent intent may be proven by circumstantial evidence or by an inference of fraudulent intent drawn from a course of conduct. *Id.*

The court finds that even if the oath was found to be false, the Debtors did not possess the requisite knowledge or fraudulent intent. The statements made at the meeting of creditors clearly explain the ownership rights concerning the real property. Although the Trustee suggests that the testimony at the meeting of creditors is irrelevant because recantation does not negate a false oath, the recantation is indicative of the Debtors' lack of a fraudulent intent. The recantation was made of their own volition and not in response to another party uncovering the truth. Furthermore, the statements at

---

[1] "If the debtor is married, state whether husband, wife, or both own the property by placing an 'H,' 'W,' 'J,' or 'C' in the column labeled 'Husband, Wife, Joint, or Community.'"

[2] Because the Trustee has failed to establish that there was a false oath made, the court could end its inquiry; however, in the interest of completeness, the court will address the remaining elements.

the meeting of creditors were in time to give the Trustee an adequate opportunity to object to the claim of exemptions. Any harm that came to the estate by way of the confusing statement on Schedule A is a result of the Trustee's failure to timely object to the claim of exemptions and not a result of a design of fraud on the part of the Debtors. The Trustee suggests that the Debtors should amend their schedules to reflect the appropriate exemption amount. Although the court recognizes that this would be an honorable act on the part of the Debtors, the court cannot ignore the holding of the Supreme Court in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), which denied a bankruptcy trustee's untimely objection to exemption even though the debtor had no colorable statutory basis for claiming the exemption.

### III. CONCLUSION

For the reasons set forth above, the court will deny the relief sought by the Trustee in his adversary complaint.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.